IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
PINE BLUFF DIVISION

JAMAR BENNETT,                      *
                                    *
            Plaintiff,              *
                                    *
vs.                                 *      No. 5:06CV00182 SWW
                                    *
CITY OF GOULD,                      *
                                    *
            Defendant.              *

**Memorandum Opinion and Order**

This is an action for declaratory judgment and for compensation and other relief under the Fair Labor Standards Act, 29 U.S.C. § 201 *et seq.* ("FLSA"). Plaintiff also asserts a state law claim of breach of contract. Pending before the Court is defendant's motion for summary judgment, plaintiff's response, and defendant's reply. After careful consideration of the motion, response, reply, briefs in support, affidavits, exhibits, and statements of facts, the Court finds the motion should be granted.

**Background**

Defendant City of Gould ("the City") hired plaintiff Jamar Bennett as its full-time Chief of Police in December 2004. Prior to that, he had been working as a patrolman for the City. Bennett testified that although the City told him he was a salaried employee, he got paid by the hour.[1] Bennett alleges the City required him to work overtime but only paid him based upon a 40-hour week schedule. Bennett resigned in May 2006. He contends the City violated the wage

---

[1] *See* Def's. Mot. Summ. J., Ex. A at 12.

and hour provisions of the FLSA by failing to pay him overtime.[2] He alleges the City retaliated against him for demanding that he be paid in accordance with the FLSA and for arresting the mayor. He further claims the City breached a contract to pay him overtime.

In its motion for summary judgment, the City asserts that Bennett was exempt from the FLSA overtime provision because he was an executive employee and because he was a member of the mayor's personal staff. The City denies retaliating against Bennett and asserts there was no contract between the parties to pay overtime.

## Standard of Review

A court shall render summary judgment upon a showing that there is no genuine issue of material fact and that the movant is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). The rule provides that "the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247-48 (1985). The substantive law identifies which facts are material. *Id.* at 248. A dispute over a material fact is genuine when the evidence is such that a reasonable jury could find for the nonmovant. *Id.* The moving party bears the initial burden of showing the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317 (1986). Once the moving party has met this burden, the non-moving party cannot simply rest on mere denials or allegations in the pleadings; rather, the non-movant "must set forth specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e); *Celotex, supra,* at 324. "Although we view the facts in a light most favorable to the non-moving party, in order to defeat a motion for

---

[2] *See* Compl. at ¶¶ 16-19.

summary judgment, the non-movant cannot simply create a factual dispute; rather, there must be a genuine dispute over those facts that could actually affect the outcome of the lawsuit." *Webb v. Lawrence County,* 144 F.3d 1131, 1135 (8th Cir. 1998). A party cannot avoid summary judgment by contradicting his own earlier testimony. *Prosser v. Ross,* 70 F.3d 1005, 1008 (8th Cir. 1995).

**Discussion**

The FLSA generally requires employers to pay their employees at least one and one-half times their regular wage rate for hours worked in excess of forty in a given week. 29 U.S.C. § 207(a)(1). Section 213(a)(1) provides, however, that the provisions of § 207 shall not apply with respect to "any employee employed in a bona fide executive, administrative, or professional capacity . . ." This is an affirmative defense on which an employer has the burden of proof. *Fife v. Harmon,* 171 F.3d 1173, 1174 (8th Cir.1999).

The FLSA's definition of a covered employee excepts the personal staff of an elected official. *See* 29 U.S.C. § 203(e)(2)(C)(i) and (ii)(II)(2004). The City also claims Bennett is an exempt employee because he is a member of the Mayor's personal staff.

**1.      Executive Employee Exemption**

Exemptions to the FLSA overtime requirements are "narrowly construed in order to further Congress' goal of providing broad federal employment protection. The burden is on the employer to prove that [an] exemption applies by demonstrat[ing] that their employees fit plainly and unmistakably within the exemption's terms and spirit." *Spinden v. GS Roofing Products Co.,* 94 F.3d 421, 426 (8th Cir. 1996), *cert. denied* 520 U.S. 1120 (1997) (internal quotations and citations omitted). To determine whether an employee is an exempt "executive" under the

3

FLSA, a court must apply Department of Labor regulations. *Fife v. Bosley,* 100 F.3d 87, 89 (8th Cir. 1996).

> Under the applicable regulations, an executive employee is one who is:
>
> (1) Compensated on a salary basis at a rate of not less than $455 per week . . .
> (2) Whose primary duty is management of the enterprise in which the employee is employed or of a customarily recognized department or subdivision thereof;
> (3) Who customarily and regularly directs the work of two or more other employees; and
> (4) Who has the authority to hire or fire other employees or whose suggestions and recommendations as to the hiring, firing, advancement, promotion or any other change of status of other employees are given particular weight.

29 C.F.R. § 541.100 (2004). The parties disagree as to whether Bennett satisfies the second and fourth factors.

"Determining whether an employee's primary duty is management depends upon 'all the facts in a particular case.' As a general rule, the regulations provide that if an employee spends over 50% of his time on managerial duties, his primary duty is management. However, if an employee spends less than 50% of his time on managerial duties, he is not presumed to have a primary duty of non-management." *Auer v. Robbins,* 65 F.3d 702, 712 (8th Cir. 1995). The *Auer* case dealt with a claim by approximately 200 police sergeants, employed or formerly employed by the St. Louis, Missouri, Police Department. The district court found that 21 categories of sergeants were exempt from overtime requirements and that two categories were partially nonexempt. The court identified four pertinent factors to determine whether an employee's primary duty is management if he spends less than 50% of his time performing managerial duties: the relative importance of the managerial duties as compared with other types of duties; the frequency with which the employee exercises discretionary powers; the employee's relative

4

freedom from supervision; and the relationship between the employee's salary and the wages paid to other employees for the kind of nonexempt work performed by the supervisor. *Id.* at 712.

Bennett testified he made reports to the mayor, Lloyd Parks, about the state of the Gould Police Department ("Department") and consulted with the mayor about hiring decisions.[3] He agreed he was the head of the Department,[4] and said he was involved in the implementation of the policies and procedures manual for the Department and "supposedly" managed the Department.[5] Bennett testified he disciplined officers when they did not follow the policies of the Department, made reports on behalf of the Department, wrote a letter to the State Division of Legislative Audit to attest that the Department was in compliance with Legislative Audit standards, planned the Department budget, interacted with other police agencies on behalf of the Department, coordinated and conducted training for officers, scheduled officer shifts, coordinated and procured equipment for the Department, investigated complaints made against the officers, evaluated the performance of Department personnel, and made reports to the Mayor concerning these performance reviews.[6] Bennett made over 30% more in compensation than his subordinates. His annual salary was $25,000; as a comparison, the annual compensation of one full-time patrol officer in the Department was approximately $18,4000 in 2006.[7]

---

[3] Def's. Mot. Summ. J., Ex. A at 25, 27.

[4] *Id.* at 24.

[5] *Id.* at 30.

[6] *Id.* at 39-43.

[7] Def's. Mot. Summ. J., Ex. B.

The City asserts that the duties performed by Bennett far exceed the scope of the duties performed by the various sergeants in *Auer* who were held to be exempt as executive employees. As to the fourth factor, the City contends Bennett had the authority to hire and fire employees. Alternatively, the City asserts Bennett's recommendations concerning personnel decisions were given particular weight.

Bennett denies that his primary duty was managerial or that he had the authority to hire or fire employees. He testified that only 20-25% of his time was spent on managerial duties and the rest of the time he was out working on the streets.[8] Bennett further states that the authority to hire and fire is vested solely in the Gould City Council. In his response to the motion for summary judgment, Bennett attaches a copy of the City's Personnel Handbook which states, under "Authority to Hire and Fire:" "The city council can hire and fire with a 2/3 vote of the council, for or against."[9] He also cites 29 C.F.R. § 541.3(b)(1) (2005) in support of his contention that the executive exemption is not applicable to him. That section, which the City said was added in 2004, provides:

> (b)(1) The section 13(a)(1) exemptions and the regulations in this part also do not apply to police officers, detectives, deputy sheriffs, state troopers, highway patrol officers, investigators, inspectors, correctional officers, parole or probation officers, park rangers, fire fighters, paramedics, emergency medical technicians, ambulance personnel, rescue workers, hazardous materials workers and similar employees, regardless of rank or pay level, who perform work such as preventing, controlling or extinguishing fires of any type; rescuing fire, crime or accident victims; preventing or detecting crimes; conducting investigations or inspections for violations of law; performing surveillance; pursuing, restraining and apprehending suspects; detaining or supervising suspected and convicted criminals, including those on probation or parole; interviewing witnesses;

---

[8] Pl's. Resp. to Def's. Mot. Summ. J., Ex. 3 at 45.

[9] *Id.*, Ex. 1.

interrogating and fingerprinting suspects; preparing investigative reports; or other similar work.

(2) Such employees do not qualify as exempt executive employees because their primary duty is not management of the enterprise in which the employee is employed or a customarily recognized department or subdivision thereof as required under § 541.100. Thus, for example, a police officer or fire fighter whose primary duty is to investigate crimes or fight fires is not exempt under section 13(a)(1) of the Act merely because the police officer or fire fighter also directs the work of other employees in the conduct of an investigation or fighting a fire.

The City argues § 514.3(b)(1) addresses police officers who are not primarily responsible for management, and does not list chiefs of police or sheriffs while it does mention deputy sheriffs as exempted employees.

The Court finds Bennett fails to raise a material issue of fact as to the City's entitlement to the defense that Bennett was exempt as an executive employee. Bennett testified that he "supposedly" managed the Department, and the list of duties he admits he performed shows that he acted primarily as manager of the Department. While these duties may not have taken up a great percentage of his time, there is no evidence to dispute that his managerial duties were more significant than the time he spent performing those duties. While Bennett asserts that the City has the sole authority to hire and fire, he testified the City gave him approval to hire an officer and that he hired an officer.[10] He also testified he fired Ms. Blair, an employee of the police department, after consulting with the mayor.[11] Further, Bennett answered affirmatively when asked whether he had "some significant authority" for hiring.[12]

---

[10] Def's. Mot. Summ. J., Ex. A at 20:5-11.

[11] *Id.* at 48.

[12] *Id.* at 27.

## 2. Personal Staff Exclusion

The FLSA does not define the term "personal staff." The Secretary of Labor has promulgated a regulation which provides: "The statutory term 'member of personal staff' generally includes only persons who are under the direct supervision of the selecting official and have regular contact with such official. The term typically does not include individuals who are directly supervised by someone other than the elected official even though they may have been selected by the official." 29 C.F.R. § 553.11(b)(2004). "Inasmuch as the definition of 'employee' under the FLSA is essentially identical to that under Title VII, courts may look to cases interpretive of the 'personal staff' exception under Title VII for guidance." *Nichols v. Hurley,* 921 F.2d 1101,1103 (10th Cir. 1990).

The parties agree the following factors are to be considered in determining whether the City may avail itself of the personal staff exemption: whether the elected official has plenary powers of appointment and removal; whether the person in the position at issue is personally accountable to only that elected official; whether the person in the position at issue represents the elected official in the eyes of the public; whether the elected official exercises a considerable amount of control over the position; the level of the position within the organization's chain of command; and the actual intimacy of the working relationship between the elected official and the person filling the position. *See Rodriguez v. Township of Holiday Lakes,* 866 F. Supp. 1012 (S.D.Tex. 1994).

While the City argues that Mayor Parks had the authority to remove Bennett from his position as Chief of Police, Bennett contends that under the Personnel Handbook, the City Council has the powers of appointment and removal. Bennett also points out that when Mayor

Parks tried to suspend him after Bennett arrested Parks, the City Council set aside the suspension by a unanimous vote.[13] Bennett further disputes that the City has shown that he represents Mayor Parks in the eyes of the public, that the Mayor exercises considerable control over plaintiff's position, that the Chief of Police position was in the Mayor's chain of command, or that the Mayor and Bennett had an intimate working relationship.

Although there may be genuine issues of material fact as to whether Bennett is an exempt employee under the personal staff exclusion, the Court finds the City is entitled to summary judgment on Bennett's FLSA claim based on the executive employee exemption.

**3.     Retaliation Claim under the FLSA**

Bennett alleges that the City retaliated against him in violation of 29 U.S.C. § 215 (a)(3) of the FLSA.[14] Section 215 (a)(3) makes it unlawful for any person "to discharge or in any manner discriminate against any employee because such employee has filed any complaint or instituted or caused to be instituted any proceeding under or related to this Act . . ." The City points out that Bennett testified he was suspended and demoted because of an incident with the Mayor, and it did not have anything to do with his request for compensatory time.[15] Bennett failed to respond to the City's motion for summary judgment as to this claim, and the Court finds there is no genuine issue of material fact in dispute. Therefore, the City is entitled to summary judgment on the retaliation claim.

---

[13] Pl's. Resp.to Def's. Mot. Summ. J., Ex. 2.

[14] Compl. at ¶ ¶ 20-22.

[15] Def's. Reply, Ex. A at 73-74.

### 4. Breach of Contract

Lastly, the City argues it is entitled to summary judgment on Bennett's breach of contract claim. The City asserts there is no evidence that a contract existed, and that the claim is preempted by the FLSA. Bennett testified that Mayor Parks agreed verbally to pay him for his overtime/compensatory time.

In *Adair v. Burgett,* 210 F.3d 378, 2000 WL 485256 (8th Cir. 2000) (unpublished per curiam), a case which originated in this Court, the Eighth Circuit affirmed the grant of summary judgment on the plaintiff's constitutional claims. With regard to the state claim, however, the Eighth Circuit, quoting *Birchem v. Knights of Columbus,* 116 F.3d 310, 314 (8th Cir. 1997), stated that "'when federal and state claims are joined and the federal claims are dismissed on a motion for summary judgment, the pendent state law claims are dismissed without prejudice to avoid [n]eedless decisions of state law . . . as a matter of comity . . .'" *Adair, supra.*

Although § 1367 and *Birchem* appear to confer discretion on the Court to retain jurisdiction of Bennett's state law claim, the language of *Adair* is unequivocal. Accordingly, based on *Adair,* the Court finds that Bennett's remaining state law claim should be dismissed without prejudice.

### Conclusion

IT IS THEREFORE ORDERED that the motion for summary judgment[16] is granted. Plaintiff's federal claims are dismissed with prejudice; plaintiff's state law claim is dismissed without prejudice.

---

[16]Docket entry 10.

DATED this 27th day of April 2007.

/s/Susan Webber Wright

UNITED STATES DISTRICT JUDGE